IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| ALLEN W. COE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:15CV1077 |
| | ) | |
| NANCY A. BERRYHILL,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Allen W. Coe ("Plaintiff") brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claims for Disability Insurance Benefits and Supplemental Security Income under, respectively, Titles II and XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I. PROCEDURAL HISTORY

Plaintiff protectively filed his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSI") on July 11, 2013, alleging a disability onset

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Carolyn W. Colvin as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

date of April 1, 2013. (Tr. 322, 279.)  His claim was initially denied on November 27, 2013 (Tr. 202) and upon reconsideration on March 7, 2014 (Tr. 210).  Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") (Tr. 228-29), which he attended on March 19, 2015 (Tr. 244). The ALJ ultimately issued a decision finding that Plaintiff was not disabled under the meaning of the Act.  (Tr. 22.)  Plaintiff's subsequent request for an appeals council review was denied on October 20, 2015 (Tr. 1), thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review.

II.     LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006).  However, "the scope of [the] review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).  "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).  Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)).  "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted).  "If there is

evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

3

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first two steps, and establishes at step three that the impairment "equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations," then "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual function[al] capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that pursuant to the administrative regulations, the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be

4

"perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the Commissioner to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

## III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since his alleged onset date. Plaintiff therefore met his burden at step one of the sequential analysis. At step two, the ALJ further determined that Plaintiff suffered the "severe impairments" of:

> diabetes mellitus, osteoarthritis in his knees, borderline intellectual functioning, depressive disorder, and alcohol abuse[.]

(Tr. 27.) The ALJ found at step three that none of these impairments met or equaled a disability listing. (Tr. 28.) Therefore, the ALJ was required to determine Plaintiff's RFC. The ALJ determined that Plaintiff retained the RFC to perform:

---

determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

5

> light work . . . except [limited to] the option to alternate between sitting and standing/walking every 30 minutes[; can] frequently climb ramps, stairs, ladders, ropes or scaffolds[;] frequently crawl and crouch[;] should have no concentrated exposure to hazardous conditions, such as unprotected heights, moving mechanical parts, uneven surfaces or bodies of water[;] able to understand, recall and perform simple, routine, repetitive tasks, with simple work-related decisions[;] is able to tolerate few changes in a routine work setting[;] should have no requirements to read instructions, write reports, or perform math calculations[.]

(Tr. 30-31.) Based on that determination, the ALJ found at step four of the analysis that Plaintiff was unable to return to his past relevant work as a truck driver or poultry farm laborer. (Tr. 35.) At step five, the ALJ determined that multiple work positions in substantial numbers existed in the national economy that a hypothetical claimant of Plaintiff's age, RFC, and vocational capabilities could perform. (Tr. 35.) In sum, the ALJ concluded that Plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy" and, therefore, Plaintiff is not disabled under the meaning of the Act. (Tr. 36.)

Plaintiff now argues that the ALJ (1) erred by determining, without substantial evidence, that Plaintiff's intellectual impairment did not meet the requirements of Listing 12.05 (Pl. Br. at 1-2); (2) failed to reconcile the inconsistencies between Plaintiff's RFC and the opinions of state agency consulting doctors to whom the ALJ gave "significant weight"; (3) failed to identify and resolve an apparent conflict between the Vocational Expert's ("VE") testimony and the Dictionary of Occupational Titles, and; (4) failed to properly consider the vocationally limiting effect of Plaintiff's right upper extremity ulnar neuropathy and Plaintiff's reliance on an assistive device in determining Plaintiff's RFC.

A.      Listing 12.05C.

At step three of the sequential analysis, the ALJ considers whether any impairment meets or equals one or more of the impairments listed in Appendix I of the regulations. In analyzing the evidence at step three, an ALJ is not required to explicitly identify and discuss every possible listing; however, he must provide sufficient explanation and analysis to allow meaningful judicial review of his step three determination, particularly where the "medical record includes a fair amount of evidence" that a claimant's impairment meets a disability listing. Bailey v. Colvin, No. 1:14CV303, 2015 WL 5227646, at *3 (M.D.N.C. Sept. 8, 2015) (quoting Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013)). "Where such evidence exists but is rejected without discussion, 'insufficient legal analysis makes it impossible for a reviewing court to evaluate whether substantial evidence supports the ALJ's findings.'" Id. (citations omitted); see also Brown v. Colvin, 639 F. App'x 921, 923 (4th Cir. 2016) (remanding where the "medical record [was] not so one-sided that one could clearly decide, without analysis, that [the listing in question was] not implicated")).

In this case, Plaintiff claims that the ALJ failed to properly evaluate whether his mental impairment met the requirements of Listing 12.05(C). Listing 12.00 covers mental disorders generally, and Listing 12.05 covers Intellectual Disability. Specifically under Listing 12.05,

> [i]ntellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05.  In addition, the required level of severity for this disorder is met if the requirements of parts A, B, C or D are also satisfied.  Specifically, Listing 12.05C cited by Plaintiff requires:

> C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]

20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05C.  In other words, a claimant must demonstrate three elements to meet Listing 12.05C:

(1) First, a claimant must prove that he or she has "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22";

(2) Second, a claimant must have "[a] valid verbal, performance, or full scale IQ of 60 through 70"; and

(3) Third, a claimant must establish "a physical or other mental impairment imposing an additional and significant work-related limitation of function."

See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05; see also Henderson v. Colvin, 643 F. App'x 273, 275 (4th Cir. 2016).  Additionally, the Fourth Circuit has noted that Prong One itself involves two parts, and if the ALJ finds: (1) "no deficits in adaptive functioning generally," and (2) "no deficiency manifested itself before the age of 22," then "[e]ither finding alone, if supported by substantial evidence, would be sufficient to support the conclusion that [the claimant] did not satisfy Prong [One]."  Hancock v. Astrue, 667 F.3d 470, 475 (4th Cir. 2012).

In the instant case, the ALJ opined that Plaintiff did not meet Listing 12.05(C) because Plaintiff

> does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. The claimant scored a 70 on a full-scale IQ test with Dr. Warren during a consultative examination. Additionally, the claimant has held full time employment in the past, including a job as a truck driver, a semi-skilled job.

(Tr. 30 (citation omitted).) Thus, the ALJ concluded that Plaintiff did not meet Prong Two of the 12.05(C) analysis because he "does not have a valid verbal, performance, or full scale IQ of 60 through 70," and that Plaintiff did not meet Prong Three because he does not have "a physical or other mental impairment imposing an additional and significant work-related limitation of function." However, it is not clear how or why the ALJ concluded that Plaintiff "does not have a valid verbal, performance, or full scale IQ of 60 through 70." (Tr. 30.) As the ALJ noted in the next sentence and repeatedly in the opinion, Plaintiff's IQ was 70 based on a Full-Scale IQ test in 2013. (Tr. 418.)[4] The ALJ makes no mention of conflicting evidence or any reason to discount Plaintiff's IQ score. As noted above, the applicable provision of Listing 12.05(C) requires that a claimant have an IQ of "60 through 70." It is unclear from the ALJ's opinion why Plaintiff was determined not to have satisfied Prong Two.

---

[4] The ALJ mentions Plaintiff's IQ score at several junctures of the opinion. (See, e.g., Tr. 30 ("[Plaintiff] did take an intelligence test, and received a full scale IQ score of 70"); Tr. 30 ("[Plaintiff] received a full-scale IQ score of 70 on an IQ test"); Tr. 32 ("[Plaintiff] scored a full-scale IQ score of 70").) The ALJ does not discount that score or provide any analysis calling the IQ score into question, and instead appears to rely on the score. In addition, the Court notes that Plaintiff's IQ score was 66 on the verbal comprehension portion of the IQ test, which would also be sufficient to trigger further analysis under Listing 12.05(C). See Ollice v. Colvin, No. 15CV927, 2016 WL 7046807, at *4 (M.D.N.C. Dec. 2, 2016).

Similarly, with respect to Prong Three of the 12.05(C) Listing criteria, it is not clear how or why the ALJ concluded that Plaintiff did not have "a physical or other mental impairment imposing an additional and significant work-related limitation of function." As to this requirement, the Listing provides that "the degree of functional limitation the additional impairment(s) imposes" will be analyzed to "determine if it significantly limits [the] physical or mental ability to do basic work activities, i.e., is a 'severe' impairment(s), as defined in §§ 404.1520(c) and 416.920(c)." 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00A. Thus, "[i]f the additional impairment(s) does not cause limitations that are 'severe' as defined in §§ 404.1520(c) and 416.920(c)," the additional impairment would not constitute "an additional and significant work-related limitation of function." Id. In this case, at step two of the sequential analysis, the ALJ found that Plaintiff suffered from the following severe impairments: "diabetes mellitus, osteoarthritis in [Plaintiff's] knees, borderline intellectual functioning, depressive disorder, and alcohol abuse." (Tr. 27.) However, the ALJ offered no discussion with respect to these impairments in connection with 12.05(C).

Besides the above quoted paragraph, the ALJ offered no other analysis in his effort to determine whether Plaintiff met Listing 12.05(C). The ALJ did include a reference to Plaintiff's past work, and although the ALJ's reasoning is unclear, it may be that the ALJ considered Plaintiff's prior work as a truck driver as a basis for determining that Plaintiff did not meet Prong One of the 12.05(C) Listing criteria, which requires a claimant to establish a deficit in adaptive functioning initially manifested before age 22. However, "the fact that a claimant has been able to work in the past does not necessarily suggest that the claimant does not satisfy the deficits in adaptive functioning requirement. . . . 'Listing 12.05(C) assume[s]

many, if not most, mildly mentally retarded individuals will be able to work . . . [but that they may] subsequently become disabled due to the development of additional severe impairments.'" Shaw v. Astrue, No. 4:08CV132-D(2), 2009 WL 2486932, at *6-7 (E.D.N.C. Aug. 13, 2009) (quoting Muntzert v. Astrue, 502 F. Supp. 2d 1148, 1158 (D. Kan. 2007)). Thus, without further explanation and analysis, the ALJ cannot wholly rely on Plaintiff's work history to support the finding that Plaintiff did not meet Prong One of Listing 12.05(C).

Moreover, there is other evidence in the record of deficits in adaptive function that the ALJ did not discount or otherwise address with respect to Listing 12.05(C). For example, the ALJ found that Plaintiff suffered from moderate restrictions in his activities of daily living. (Tr. 29.) In addition, the ALJ noted Plaintiff's testimony that he has limited ability to read and write and that he attended special education classes in high school and received a certificate of attendance but did not graduate. (Tr. 29, 85.) The school record reflects a reference to "L.D. classes," and Plaintiff was apparently ranked 111 in a class of 119. (Tr. 115-16.) The school records also reflect that he did not pass end-of-year testing in reading and mathematics (Tr. 119-20), and IQ testing in the ninth grade reflected a Total IQ of 68. (Tr. 120.) The ALJ also noted Plaintiff's testimony that he had to take the driver's license test seven times because he cannot read. (Tr. 29, 85.) Plaintiff testified that he only passed the test after a DMV examiner read the test to him. (Tr. 85-86.) He also testified that he could not read bills, write checks, or balance a checkbook, and that his wife took care of those things. (Tr. 86.) In addition, the testing by the Consultative Examiner reflected that Plaintiff had reading and writing skills at the 3rd grade level and math skills at the 5th grade level. (Tr. 418.) Moreover, the Consultative Examiner conducted specific testing of adaptive behavior, and those tests reflects "moderate

11

deficits" in communication, with an age equivalent of age 9. The testing also reflects an overall mild deficit in adaptive functioning, as well as "significant maladaptive behavior." (Tr. 418.) The Consultative Examiner noted that the IQ testing reflected that Plaintiff was in the "Extremely Low" range of intelligence, that further testing reflected that Plaintiff's academic skills were "within the very low range." (Tr. 422.) The Consultative Examiner concluded that Plaintiff had "Extremely Low to Borderline Intelligence." (Tr. 423.) Thus, there is evidence in the record to support Plaintiff's contentions regarding Listing 12.05(C).

Finally, the Court notes that the Commissioner argues in her brief that Plaintiff does not meet the 12.05(C) Listing criteria because Plaintiff only suffered from "borderline intellectual functioning." (Def. Br. at 17.) At step two of the sequential analysis, the ALJ identified Plaintiff's mental impairment as "borderline intellectual functioning." (Tr. 27.) However, the ALJ did not include any explanation or analysis regarding this issue, and there is no way to determine whether and how the ALJ considered the various pieces of evidence in the record on this issue, or whether this determination was intended to affect whether Plaintiff did or did not meet the 12.05(C) Listing criteria. In addition, to the extent the Commissioner cites additional evidence in the record that was not relied upon by the ALJ, the Commissioner's after-the-fact rationale cannot provide sufficient explanation for meaningful review by the courts. See Sec. & Exch. Comm'n v. Chenery Corp., 318 U.S. 80, 87 (1943) (courts must review administrative decisions only on the grounds upon which the record discloses the action was based). Ultimately, the responsibility of weighing the conflicting evidence regarding Plaintiff's mental abilities belongs exclusively to the ALJ. See Edge v.

Astrue, 627 F. Supp. 2d 609, 612 (E.D.N.C. 2008) ("[A]n [ALJ] has the sole authority to make credibility determinations and resolve inconsistencies or conflicts in the evidence.").

In sum, the ALJ failed to "include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence" with respect to whether Plaintiff met Listing 12.05(C). Radford, 734 F.3d at 295 (citing Hines v. Bowen, 872 F.2d 56, 59 (4th Cir. 1989)). When an ALJ makes a Listing determination without sufficient legal analysis, the reviewing court must remand for additional explanation. See Radford, 734 F.3d at 295 (finding an ALJ's opinion deficient when it denied Listing eligibility but was "devoid of reasoning," thus precluding meaningful review); see also Brown, 639 F. App'x at 922-23 (same); DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator."). In light of the above, remand is required.

B. Remaining Contentions.

Having reached this conclusion, the Court need not address at length the other issues raised by Plaintiff. The Court notes that Plaintiff contends that the ALJ gave "substantial weight" to the state agency physicians, Dr. David R. Mullen and Dr. Keith Noles, who both determined that Plaintiff had moderate difficulties with regard to social functioning and moderate difficulties in maintaining concentration, persistence, or pace (see Tr. 148 (Dr. Mullen); 189 (Dr. Noles)), but the ALJ found only mild difficulties in social functioning and mild difficulties in concentration, persistence or pace, without explaining the inconsistency. In addition, Plaintiff contends that the ALJ failed to resolve a conflict between the testimony of the VE and the Dictionary of Occupational Titles. See Pearson v. Colvin, 810 F.3d 204

(4th Cir. 2015); Henderson v. Colvin, 643 F. App'x 273 (4th Cir. 2016). Specifically, Plaintiff contends that some of the jobs cited by the VE require a Reasoning Level of 2 or 3, or a Language Development Level of 2 or 3, which conflicts with an RFC limiting him to simple, routine, repetitive tasks with "no requirements to read instructions, write reports, or perform math calculations." (Tr. 31.) See, e.g., Mullis v. Colvin, No. 1:11CV22, 2014 WL 2257188, at *1 (M.D.N.C. May 29, 2014) (Osteen, C.J.) (finding an apparent conflict between an RFC limitation to simple, routine, repetitive tasks at a low production pace and low stress environment and a VE's testimony that Plaintiff could perform a job to which the DOT assigned a Reasoning Level of 3); see also Henderson, 643 F. App'x at 277 (holding that "there is an apparent conflict between an RFC that limits [the claimant] to one-to-two step instructions and GED Reasoning Code 2, which requires the ability to understand detailed instructions," and "the VE's conclusory statement that a conflict did not exist was insufficient"). The ALJ did not ask the VE to explain this inconsistency, nor did the ALJ ever receive a "reasonable explanation for [this] discrepancy." See Pearson, 810 F.3d at 209.

Finally, Plaintiff also asserts that the ALJ failed to properly consider the vocationally limiting effect of Plaintiff's right upper extremity ulnar neuropathy.[5] The ALJ did not include Plaintiff's arm impairment as a severe impairment at step two of the sequential evaluation process. In making that determination, the ALJ noted that at follow-up appointments the injury was healing "pretty well." (Tr. 28.) However, in the analysis at step two, the ALJ failed

---

[5] Plaintiff fell and suffered a deep-tissue laceration of his right forearm that required twenty-four stitches. (Tr. 438.) The hospital records reflect that the muscle was involved/exposed, and there was deep tissue penetration with nerve injury and vascular injury. (Tr. 438.) An x-ray reflected a "questionable tiny radiopaque foreign body within the area of laceration but this is not confirmed." (Tr. 441.)

14

to address notes from Plaintiff's primary care physician approximately one year later, on January 6, 2015, reflecting that Plaintiff had been experiencing numbness in his 4th and 5th digits since his December 6, 2013 fall. (Tr. 474.) These symptoms were consistent with ulnar neuropathy. Plaintiff's physician noted that these symptoms were "not improving" and, as a result, Plaintiff had only a limited ability to grip with his right hand. In subsequent steps of the evaluation process, the ALJ noted restrictions in Plaintiff's activities of daily living due to his right upper extremity ulnar neuropathy, including dropping things on the floor because his fingers are numb and requiring help to put on socks and button his shirts. (Tr. 29.) The ALJ also noted later in the decision that on January 6, 2015, Plaintiff's "right upper sensory exam showed symptoms consistent with ulnar neuropathy." (Tr. 33.) When determining Plaintiff's RFC, however, the ALJ did not address any RFC limitations related to Plaintiff's right upper extremity impairment. Plaintiff now argues that the ALJ should have included restrictions with respect to handling, reaching, and fingering, or the in the alternative, should have explained why such a limitation was omitted. It appears that the ALJ's failure to adequately address this impairment would provide an additional basis for remand in this case. However, given the need for a remand with respect to the evaluation of Plaintiff's intellectual impairment, the Court need not address these remaining issues at this time, and the ALJ can further consider these issues as appropriate on remand.

IV. CONCLUSION

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be REVERSED, and that the matter be REMANDED to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner should be directed to remand

the matter to the ALJ for proceedings consistent with this Recommendation. To this extent, Defendant's Motion for Judgment on the Pleadings [Doc. #11] should be DENIED, and Plaintiff's Motion for Judgment on the Pleadings [Doc. #9] should be GRANTED. However, to the extent that Plaintiff's motion seeks an immediate award of benefits, it should be DENIED.

This, the 6th day of March, 2017.

/s/ Joi Elizabeth Peake  
United States Magistrate Judge